TIME WARNER SPORTS
MERCHANDISING,
Plaintiff,

v.

CHICAGOLAND PROCESSING
CORPORATION,
Defendant.

No. 95 C 1364.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 15, 1997.

William E. Snyder, Michael, Best & Friedrich, Chicago, IL, for Plaintiff.

Robert A. Carson, Kathryn S. Matkov, Gould & Ratner, Chicago, IL, for Defendant.

*MEMORANDUM OPINION
AND ORDER*

SHADUR, Senior District Judge.

This Court's extended September 4, 1997 memorandum opinion and order, 974 F.Supp. 1163 (the "Opinion") addressed at length the various aspects of the Fed.R.Civ.P. ("Rule") 56 motion for summary judgment that had been filed by Time Warner Sports Merchandising ("Time Warner") to dispose of the Amended Counterclaim ("ACC") filed against it by Chicagoland Processing Corporation ("Chicagoland"). Opinion, at 974 F.Supp. at 1171–1172, which addressed ACC Count III, reserved judgment as to the possible dismissal of that claim pending further submissions by the litigants bearing on the forfeiture or waiver of Time Warner's statute of frauds argument.

As the Opinion reflected, Time Warner had initially referred to such a contention in a conclusory one-sentence affirmative defense in its reply to the ACC—but when it filed its Rule 56 motion and bulky supporting materials much farther on into the lawsuit, it said not a word on that score. It was only after Chicagoland's responsive memorandum had posed what appeared to be substantial problems to the possible trashing of its Count III claim that Time Warner even mentioned the issue, referring to the subject for the first time in its R. Mem. 14. In any event, the submissions that this Court requested in the Opinion have now been made, and the matter is ripe for decision.

For its part, Time Warner has spoken to the waiver or forfeiture issue identified in the Opinion, submitting two citations (one of those a footnote dictum) in support its argument that a movant's unsuccessful effort to dispose of a case via summary judgment does not preclude that movant from asserting an omitted ground when the case later goes to trial. Those authorities are pretty thin in those terms. Each of them is nearly a quarter-century old, antedating by more than a decade the sea change in summary judgment jurisprudence that came with the Supreme Court's trilogy of decisions (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) and *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) that both clarified and enlarged upon the principles governing the utilization of sum-

mary judgment motions as a substitute for trial.

More importantly, neither of the cases on which Time Warner relies dealt with anything resembling the kind of situation involved here, (1) where the affirmative defense was simply stated in a single sentence in a responsive pleading to the ACC and was not pursued promptly thereafter, (2) where that affirmative defense (if it were in fact to be pursued) would have been potentially dispositive as a matter of law without Time Warner's having to adduce any evidence whatever in conjunction with its ·Rule 56 motion as to that claim, (3) where Time Warner's Rule 56 motion presented a major onslaught on every facet of the ACC without even a whisper on the subject of that affirmative defense, and (4) where it was not until the very end of Time Warner's reply memorandum that the subject was adverted to at all—and then in a kind of oh-by-the-way manner, at that. After all, statute of frauds defenses challenge only the enforceability and not the validity of oral promises, and the congeries of circumstances that are involved here would appear to have presented a strong case for holding Time Warner to have forfeited the claim that it had chosen to omit entirely from its Rule 56 motion, its supporting memorandum and its supporting papers.

But as it turns out, this Court need not explore new legal frontiers in that respect, for Chicagoland has identified an entirely different reason that torpedoes any potential for the summary disposition of its claim on statute of frauds grounds. That result is compelled in any event by Illinois' solidly-established "full performance" exception to the statute of frauds.

ACC Count III seeks to enforce an alleged set of promises by Time Warner (ACC ¶ 62) given in exchange for Chicagoland's promise to be the exclusive licensee for Tournament medallions. According to Chicagoland, it fully performed its end of the bargain (a matter that at worst depends on a factfinder's resolution of the parties' competing scenarios). That being so, the doctrine that Time Warner's full performance of that oral agreement bars the application of the statute of frauds comes into play—*Noesges v. Servicemaster Co.*, 233 Ill.App.3d 158, 162, 174 Ill.Dec. 240, 244, 598 N.E.2d 437, 441 (2d Dist.1992) (numerous citations omitted) is typical of the cases so holding:

> It is well settled, however, that complete performance on the part of one of the parties to the oral agreement bars application of the statute. "The rationale of the full performance doctrine is that when one party, in reasonable reliance on the contract, performs all of its obligations, it would be unfair to allow the other party to accept the benefits under the contact but to avoid its reciprocal obligations by asserting the Statute of Frauds." Illinois courts have uniformly followed the rule "that when one party to a contract completes his performance, the one-year provision of the statute does not prevent enforcement of the promises of the other party."

Indeed, one of the cases cited in *Noesges* applied that exception in a situation that was startlingly parallel to Chicagoland's version of the events here (*Adams v. Lockformer Co.*, 167 Ill.App.3d 93, 100–01, 117 Ill.Dec. 826, 830–31, 520 N.E.2d 1177, 1181–82 (1st Dist. 1988)).

Accordingly Time Warner's Rule 56 motion is also denied as to ACC Count III. This same analysis and determination also applies to ACC Count IV (although that claim has already survived summary judgment for the reasons stated in Opinion, at 974 F.Supp. at 1172–1174, the current ruling serves to preserve it as a promissory estoppel claim, in addition to the already viable equitable estoppel claim analyzed in Opinion, at 974 F.Supp. at 1172–1174). Both Count III and Count IV will proceed to trial.